IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL CASE NO.: |
| THOMAS MENSAH ADDAQUAY, | 1:20-CR-0045-LMM-JSA |
| Defendant. | |

### REPORT AND RECOMMENDATION

This matter is before the undersigned on Defendant Thomas Mensah Addaquay's Motion to Restrict Certain Testimony Due to Destruction of Evidence [38] ("Motion"). Addaquay initially filed his Motion [38] on April 26, 2020. On September 15, 2020, the undersigned issued a Report and Recommendation [64] recommending that the Motion be denied and declining to hold an evidentiary hearing. On November 2, 2020, Judge Leigh Martin May issued an Order [69] declining to adopt the Report and Recommendation and resubmitting the Motion to the undersigned for an evidentiary hearing. The hearing was held on September 22, 2021 [104] and December 10, 2021 [110], and the parties submitted post-hearing briefs [114][115][116]. For the reasons set forth below, the Court **RECOMMENDS** that the Motion be **DENIED**.[1]

---

[1] Although styled on the docket as a motion in limine, Addaquay's arguments are closer to a motion to suppress evidence on grounds of alleged constitutional

1

**A. Background**

The Indictment alleges several counts of wire fraud, money laundering, and conspiracy against Addaquay and his Co-Defendant Clara Karabani, relating to an alleged "business email compromise scheme" and "romance scam," which together allegedly lasted over two years. This motion relates only to the evidence of a separate scheme, brought only against Addaquay in Count Fourteen. Specifically, the Indictment alleges that, on May 1, 2019, Addaquay used a fictitious identity at the teller counter of a Fifth Third Bank branch (the "Bank") and presented a driver's license and debit card bearing the fictitious identity in an attempt to fraudulently withdraw cash and obtain two cashiers' checks from an account that he allegedly opened in a false identity several weeks earlier. *See* Indictment [1] ¶¶ 20-23. Addaquay was arrested at the Bank, and the instant dispute is about video footage from the day of his arrest.

The evidence adduced at the hearing in this matter shows the following:

Prior to Addaquay's arrest on May 1, 2019, an unnamed woman entered the Bank to complain about not being able to negotiate a check that had been written to her by Addaquay. Sept. 22, 2021 Tr. [104] at 16:24-17:1, 17:19-20, 29:14-16. She

---

violations. Therefore, the undersigned will not issue an order adjudicating this motion but rather a report and recommendation to the District Judge, consistent with the limitations on the undersigned's authority vis-à-vis motions to suppress evidence. *See* 28 U.S.C. § 636(b)(1)(A).

then summoned Addaquay to the Bank. *Id.* at 18:1-2, 26:20-22. When Addaquay arrived, he, the unnamed woman, and the Bank's branch manager—Lakesha Johnson—met in Johnson's office. *Id.* at 17:14-16. At some point during this meeting Addaquay presented what Johnson believed to be false identification. *Id.* at 29:17-24. Johnson did not know whether Addaquay may have also presented identification at some other point to a teller (as the Indictment suggests). *Id*. at 29:17-30:22; *see also* Indictment [1] ¶ 22. In any event, the police were called, and they arrested Addaquay. Sept. 22, 2021 Tr. [104] at 11:20-22; Dec. 10, 2021 Tr. [110] at 12:1-3. Johnson believed the unnamed woman left the Bank before the police arrived. Sept. 22, 2021 Tr. [104] at 21:7-12.

Following Addaquay's arrest, defense counsel sent a number of preservation requests for all footage from May 1, 2019 from 2:00 PM to 5:30 PM. *See* Def. Ex. 2 from Sept. 22, 2021 Hr'g (indicating that Breanna Shy-Ganzy of the Cobb County Sherriff's Department and a Cobb County Assistant District Attorney[2] received preservation requests in May 2019); Sept. 22, 2021 Tr. [104] at 22:6-20 (indicating that Johnson received a preservation request on May 13, 2019), 35:3-10 (indicating that a preservation letter was mailed to Fifth Third Bank on May 13, 2019), 45:16-

---

[2] Addaquay did not call any witnesses from the Cobb County District Attorney's Office to testify as to what actions (if any) it took in response to his request.

3

20 (indicating that Fifth Third Bank received subpoenas in January 2020, March 2020, and January 2021).

The Government also sought video footage of the incident. On May 22, 2019, the Government subpoenaed the Bank and requested all pertinent records (including surveillance footage). Sept. 22, 2021 Tr. [104] at 73:13-16, 83:1. When the Bank's initial response to the subpoena did not include any surveillance footage, United States Secret Service Special Agent Carlos Torrez, the case agent at the beginning of the investigation, followed up to request it. *Id.* at 74:1-10. In response, the Bank produced three videos: the first depicts Addaquay entering the Bank, the second depicts police officers entering the Bank, and the third depicts Addaquay interacting with police officers. *Id.* at 76:1-7. Special Agent Torrez assumed that the Bank security officials provided the relevant footage of the incident. *Id.* at 82:2-3 ("My assumption would be if I ask somebody for pertinent information, I would receive it."). The Government produced these videos, which together last less than ten minutes, to Addaquay. *See* Def. Br. [114] at 2-3.

It is undisputed that Addaquay never received the additional several hours-worth of footage from the Bank as he had requested. The testimony from the Bank was not entirely clear as to the circumstances regarding the handling of Addaquay's requests for the videos. By the time Addaquay sent subpoenas to the Bank for footage in 2020 and 2021, more than the Bank's standard 90-day preservation period

had passed, and the footage was apparently no longer in existence.³ However, Addaquay had sent letters to the Bank's corporate offices and to Johnson (the branch manager), as well as to the Cobb County investigator initially working the case, in May 2019, within the preservation period. The evidence is somewhat murky as to why the Bank did not preserve the full video in response to these letters, but it appears that a communication failure within the Bank may have been at least partially to blame. Sept. 22, 2021 Tr. [104] at 63:10-64:15 (Bank's subpoena manager testifying that although he found emails from defense counsel requesting preservation, he was unable to uncover any record of letter correspondence—though he did not check with every department at the Bank). As for the Cobb County investigator, she did not recall whether she received a preservation letter from defense counsel and was unable to remember whether she made any attempt to cause the Bank to preserve evidence in the case. Dec. 10, 2021 Tr. [110] at 20:18-23.⁴

---

³ According to Addaquay, "[t]he government . . . claims that the video was destroyed as part of Fifth Third Bank's 'routine' procedures but yet cites no evidence or testimony in support of such a proposition. Nothing from the Evidentiary Hearing confirms the government's position in this regard. In fact, quite the opposite is true. The testimony adduced at the hearing reveals that it is unclear when, by whom or why the evidence was destroyed making the government's position untenable." Def. Reply [116] at 3. However, the Bank's subpoena manager's testimony (which the Government cites) supports the Government's position. *See* Sept. 22, 2021 Tr. [104] at 38:20-23 ("**Q:** First, I would like to start with Fifth Third Bank's video retention policy. What is the video retention policy for Fifth Third Bank? **A:** 90 days."), 59:2-3 ("after 90 days it was purged from the system").

⁴ The Cobb County investigator, Breanna Shy-Ganzy, is no longer employed with the Cobb County Sheriff's Office. Dec. 10, 2021 Tr. [110] at 11:1-3.

Addaquay does not contend that the Government destroyed any footage that it obtained or had any part in the Bank's destruction of any other footage from between 2:00 PM and 5:30 PM. Indeed, it is undisputed that the missing footage was destroyed by the Bank. The Bank's subpoena manager, Mike Kramer, testified that the footage was edited by the Bank's Protection Department, and the full video was purged pursuant to the Bank's ninety-day retention policy. *See* Sept. 22, 2021 Tr. [104] at 38:20-23, 47:9-10, 59:2-3. Additionally, Special Agent Torrez testified that he did not direct or request that the Bank edit the footage in any way. *Id.* at 76:24-77:6. Similarly, the investigator with the Cobb County Sherriff's Office, Breanna Shy-Ganzy, testified that she never edited, altered, or even received any video footage of the May 1, 2019 incident at the Bank. Dec. 10, 2021 Tr. [110] at 28:18-29:7.

Addaquay nevertheless contends that the Government and its agents were "grossly negligent" in failing to have the full 3.5-hour video preserved. Def. Br. [114] at 17. As a consequence for this destruction of evidence, Addaquay requests that Count Fourteen be dismissed, or in the alternative "that the government's ability to present evidence at trial of things that would have been depicted in the destroyed portions of the video be severely limited and the jury instructed that it can draw a negative inference against the government for the destruction, or failure to preserve, the surveillance footage." *Id.* at 9.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion [38] be **DENIED**.

**B. Discussion**

  a. *Legal Standard*

Addaquay seeks relief based on the Due Process Clause of the Fifth Amendment. Whether the destruction of evidence violates a defendant's Fifth Amendment rights "depends on 'the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its unavailability.'" *United States v. O'Neill*, 767 F.2d 780, 787 (11th Cir. 1985) (quoting *United States v. Vaughn*, 736 F.2d 665, 666 (11th Cir. 1984)). "The defendant bears the burden of showing that the missing evidence would have been material and favorable." *Id.*

As the Eleventh Circuit has explained:

> "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)." *United States v. Brown*, 9 F.3d 907, 910 (11th Cir.1993). "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. (quoting *Trombetta* at 489, 104 S.Ct. 2528). "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police'" *Illinois v. Fisher*, 540 U.S. 544, 547-48, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004), quoting

7

*Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

*United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006).

As discussed below, the undersigned finds that Addaquay has shown neither bad faith on the part of the Government, nor that any potentially useful evidence was lost. The Motion therefore fails.

### b. *Bad Faith*

Addaquay has failed to show bad faith on the part of the Government. There is no indication that the Government either knew the video was potentially exculpatory and let it be destroyed, or purposefully caused its destruction. There is no dispute that the Government had no involvement with the editing or destruction of the footage. The Bank's subpoena manager testified that the footage was edited by the Bank's Protection Department, and the full video was purged pursuant to the Bank's ninety-day retention policy. Further, Special Agent Torrez testified that he did not direct or request that the Bank edit the footage and Shy-Ganzy testified that she never edited, altered, or even received the footage.

Addaquay acknowledges that "as a general matter concerns of due process apply only to actions by the state, not by private citizens[.]" Def. Br. [114] at 15. He nonetheless argues that his constitutional rights were violated because the Government was grossly negligent in letting the video be destroyed by the Bank. But that appears to be untrue. Within a month of Addaquay's arrest, the Government

sought all pertinent records (including surveillance footage) from the Bank and *followed up* to request video when the Bank's initial production did not include any. Sept. 22, 2021 Tr. [104] at 73:13-74:10, 82:25-83:1. When Special Agent Torrez ultimately received the footage, he reasonably assumed it to be what was pertinent. *Id.* at 82:2-3 ("My assumption would be if I ask somebody for pertinent information, I would receive it.").

Addaquay argues that the officers should have known to request several hours more of video footage to show his additional activity within the Bank. But even assuming that it might have been better police work to have done so, Addaquay cannot justify suppression of evidence based on such arguable negligence. There is simply no evidence to suggest that any investigator contemplated the evidentiary significance of the additional hours of footage that Addaquay desires, and deliberately failed to obtain it for purposes of denying that evidence to Addaquay.

Addaquay has not cited a single case where an independent third party's destruction of evidence—without any government involvement—was found to violate a defendant's Fifth Amendment rights. *See United States v. Fernandez*, No. 20-2106, 2022 WL 325938, at *14 (10th Cir. Feb. 3, 2022) (refusing to hold government "responsible for whatever caused Greyhound not to be able to provide [defendant] with the recordings he requested" where evidence indicated that government "simply had nothing to do with how Greyhound operated or maintained

its system of video surveillance, including its recording and preservation of videos"); *cf. United States v. Beckstead*, 500 F.3d 1154, 1158 n.3 (10th Cir. 2007) (Although evidence of a methamphetamine lab was destroyed by employees of a private company, "[t]he company's employees . . . *acted only at the specific direction of police officers*. Under these circumstances, we will treat the destruction of the methamphetamine lab as the *government action necessary to support a due process claim*." (emphasis added)); *United States v. Cooper*, 983 F.2d 928, 930 (9th Cir. 1993) (affirming dismissal of indictment where evidence was destroyed by "a waste disposal company *under contract to the DEA*" (emphasis added)). Thus, Addaquay has failed to show that the Government had any connection with the destruction—much less acted in bad faith.

      c.   *Utility of Missing Video*

Although Addaquay's failure to show bad faith by the Government is dispositive, the undersigned also finds that Addaquay fails to show that the missing video would be likely to significantly contribute to Addaquay's defense. Addaquay argues that, contrary to the assertion in the indictment that he "approached the teller counter[,]" *see* Indictment [1] ¶ 22, the footage would show that he "never approached the teller but was instead greeted by [the unnamed woman] who summoned him to the bank and who was *not* a bank employee; together they met with [Johnson], and stayed at the bank for almost two hours before Addaquay was

10

arrested." Def. Br. [114] at 13. He also asserts that the "video would have shown without a doubt that none of Addaquay's actions while at the bank were criminal in nature, and would have also shown how the unnamed female fled the bank just minutes before the police's arrival." *Id.* He argues that the video would (1) show his innocent actions; (2) "confirm the presence of [the unnamed woman], the length of time of the meeting, actions of the third party and the bank manager before the Defendant arrived and the fact that this was not simply a typical withdrawal at the teller as the Indictment would lead the jury to believe[;]" and (3) allow him to confront and cross examine Johnson. *Id.* at 13-14.

There is no indication that the footage at any time contained audio. Given the nature of the fraud allegations against Addaquay, the undersigned cannot imagine—and Addaquay fails to explain—how additional silent footage from overhead bank cameras "would have shown without a doubt that none of Addaquay's actions while at the bank were criminal in nature[.]" Nor is there any indication that it was likely that additional footage would have been at such a level of detail as to be able to show what documents if any may have been passed. Indeed, the Bank employees who testified were unaware of whether there were any cameras capable of capturing what occurred in Johnson's office. Sept. 22, 2021 Tr. [104] at 29:25-30:3.

Additional photographic evidence would have therefore, at most, been of secondary importance and likely duplicative of witness testimony. *See Revolorio-*

11

*Ramo*, 468 F.3d at 774 ("Any potentially exculpatory evidence aboard the MARTITA LAU would have, at best, bolstered an existing argument that was presented to the jury through the testimony of the defendants, rather than enabling the defense to present argument not otherwise available.").

To the extent Addaquay suggests that the video might show that he never "approached" the "teller," as the Indictment alleges, this suggestion is speculative. And it is also immaterial. Whether Addaquay displayed the false identification information to Bank employees behind the teller counter or at a desk is not an exculpatory distinction and at most might show a minor contradiction on a non-essential allegation. This is not the basis of a Due Process violation.

To the extent Addaquay ascribes significance to additional footage that would have shown the presence of the unknown woman described above, the Court disagrees. Nothing about the presence of this woman would tend to exculpate Addaquay from the act he is accused of, that is, attempting to make withdrawals using false identification. This allegation turns on Addaquay's presentation of false identification information for purposes of negotiating a check or making a withdrawal, not whether another person was also present or even involved.

Moreover, Addaquay has alternative means of proving the presence of this woman, that is, through the testimony of Johnson.[5]

In the end, Addaquay merely speculates that what may have been captured in the additional footage may have been material. Nevertheless, he is not without any alternative at trial. He would be free to establish the *lack* of photographic or other evidence at trial and make any argument he wishes to make to the jury as to how this lack of evidence fails to meet the Government's substantial burdens in this case. To the extent Addaquay was in the Bank for several hours, but the Government only obtained less than ten minutes of footage, he is fully able to show that to the jury and argue the lack of evidence. It is not at all clear that the actual missing footage itself would have been any more helpful to his defense.

### d. *Duty to Disclose Destruction*

Addaquay also points to language from an out of circuit case that says that *Brady v. Maryland*, 373 U.S. 83, 87 (1963) "requires the prosecutor to produce exculpatory evidence to the defense and this could conceivably include information

---

[5] To the extent Addaquay suggests in his reply brief that Johnson, a private bank employee, should be prohibited from testifying at trial because she supposedly failed to previously inform the Cobb County investigators about the presence of the unnamed woman, that is meritless. *See* Def. Reply [116] at 13. A difference in detail between a witness's trial testimony and prior reports to law enforcement does not equate to the Government soliciting or failing to correct false evidence. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). Addaquay is fully able to cross-examine Johnson and make any argument to the jury as to the significance it should attach to Johnson's supposed prior failure to disclose the woman.

that someone—even a private citizen—had destroyed exculpatory evidence[,]" *United States v. Laurent*, 607 F.3d 895, 900 (1st Cir. 2010), and suggests that "there is reason to believe that the government's failure to disclose the fact that the evidence at issue was destroyed by a third party violates the government's statutory and ethical obligations under" Federal Rule of Criminal Procedure 16. Def. Br. [114] at 15. But the undersigned fails to see how any such duty was violated here, where the Government promptly sought all pertinent records from the Bank, followed up to check whether there was video footage, and then turned the video footage it received—which it understood to be the pertinent footage—over to defense counsel. Moreover, for all of the reasons discussed above, the record does not show any destruction of "exculpatory" evidence, or any actions taken outside of the ordinary document-retention practices of a private institution. Addaquay's Motion should be denied as meritless.

### C. Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Motion [38] be **DENIED**. With no other matters before the undersigned, this matter is **READY FOR TRIAL**.

IT IS SO **RECOMMENDED** this 28th day of February, 2022.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**