IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:20-cr-00045-LMM-JSA |
| THOMAS MENSAH ADDAQUAY and CLARA KARABANI, | : | |
| | : | |
| Defendants. | : | |

# **ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R"), Dkt. No. [117], recommending denial of Defendant Thomas Mensah Addaquay's Motion to Restrict Certain Testimony Due to Destruction of Evidence, Dkt. No. [38]. Defendant has filed objections to the R&R. Dkt. No. [120]. After due consideration, the Court **OVERRULES** the objections, **ADOPTS** the R&R, **DENIES** Defendant's motion, and **SETS** the case for trial.

**I.   Motion to Restrict Certain Testimony Due to Destruction of Evidence**

Count Fourteen of the indictment alleges that on or about May 1, 2019, Defendant committed the offense of bank fraud. Dkt. No. [1] ¶ 18. Specifically, the indictment alleges that on or about March 23, 2019, Defendant used a

1

fictitious identity to open a bank account at Fifth Third Bank (hereinafter, "the Bank"), id. ¶¶ 19-20; that about two days later, Defendant, using the same fictitious identity, deposited a cashier's check into the account in the amount of $43,476.85, id. ¶ 21; and that on or about May 1, 2019, Defendant, again using the same fictitious identity, approached the teller counter at the Bank and attempted to withdraw $3,000 cash and two cashier's checks in the amounts of $20,000 each, id. ¶¶ 22-24. Defendant was arrested on May 1, 2019, while inside the Bank. Dkt. No. [38] ¶ 1.

In the motion that is presently before the Court, Defendant argues that he suffered a due-process violation when the Bank destroyed certain surveillance video gathered on May 1, 2019, from 2:00 p.m. to 5:30 p.m., despite requests from his counsel to the Bank, the arresting officer, and the Cobb County District Attorney's Office that the video be collected and preserved. Id. ¶¶ 2-7. He contends that because the video in question has been destroyed and is no longer available for review, he is unable to properly challenge the testimony of key witnesses, and he therefore seeks dismissal of Count Fourteen or, in the alternative, restriction of testimony concerning evidence that would have been captured on the video and instruction to the jury "that it can draw a negative inference against the government for the destruction, or failure to preserve, the surveillance footage." Id. ¶ 6; Dkt. No. [114] at 9.

In the R&R, the Magistrate Judge recommended that the motion be denied. Dkt. No. [117]. He explained that to establish that the destruction of evidence violates a defendant's Fifth Amendment rights, the defendant must show that the evidence "was likely to significantly contribute to his defense" and that the failure to preserve the evidence resulted from "bad faith on the part of the police," and he found that Defendant had shown neither bad faith on the part of the Government, nor that any potentially useful evidence was lost. Dkt. No. [117] at 7-8.

Plaintiff filed objections to the Magistrate Judge's R&R. Dkt. No. [120]. In the objections, he posits that the missing surveillance footage was destroyed not as a result of a mistake by the Bank, as the Magistrate Judge found, but rather was destroyed as a result of coordinated activity by employees of the Bank "to negate any potential liability for the [B]ank or its employees." Id. at 3-8. He further contends that the missing footage would have significantly contributed to his defense and was not duplicative of other evidence because it would establish the presence of an unidentified woman not mentioned in the police report of the alleged crime; would show that the woman met with the Government's principal witness, the Bank's financial-center manager, well before Defendant arrived at the Bank; would establish the relationship between the woman and the manager by way of their facial expressions and the length of time they spoke; would show that the woman summoned Defendant to the Bank and thus that Defendant was

3

not at the Bank to make a withdrawal but was instead there to meet with the woman and the manager; would show that the three met in the manager's office and stayed there for some time; would show whether the manager left her office at some point to speak to a teller or do something else at the Bank; and might show that it was the unknown woman who was in possession of the false identification and forged check and that she attempted to trap Defendant into her scheme and use him as a scapegoat or that the Bank's financial-center manager was involved in plans to lure Defendant. Id. at 9-10.

Under 28 U.S.C. § 636, the Court reviews a Magistrate Judge's R&R for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.

After careful review, the Court finds no error in the Magistrate Judge's recommendation to deny Defendant's motion. As the Magistrate Judge explained, and Defendant does not dispute, "[w]hether there was a due process violation because of the destruction of evidence depends on the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its unavailability." United States v. O'Neill, 767 F.2d 780 at 786-87 (11th Cir. 1985) (internal quotation marks omitted). It is the defendant's burden to show that the missing evidence "would have been material and favorable." Id. at 787. To meet the standard of constitutional

materiality, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed[] and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." United States v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006) (internal quotation marks omitted). Additionally, the failure to preserve the potentially useful evidence does not violate the due-process clause unless the defendant "can show bad faith on the part of the police." Id. (internal quotation marks omitted).

While Defendant has argued that the Bank acted in bad faith in destroying the surveillance video, his objections present no argument or evidence showing that the Government acted in bad faith. In fact, he admits that the Government sent the Bank a subpoena for records well before the expiration of the Bank's 90-day retention policy, Dkt. No. [120] at 4-7, and the record shows that the Government's investigator reached out to the Bank's fraud investigator to request surveillance video when the Bank's initial production did not include any, reached out again when the Government received an unreadable copy in response, made sure that the Government received a readable replacement copy, and reasonably presumed the footage to be the pertinent information he requested. Dkt. No. [104] at 73-74, 82-83. The Court therefore finds no plain error in the Magistrate Judge's determination that Defendant failed to meet his burden to show that the Government acted in bad faith.

The Court has considered de novo Defendant's contention that the missing footage would have significantly contributed to his defense and was not duplicative of other evidence but also concludes that Defendant failed to show that the missing surveillance video would have been material and favorable. The majority of what Defendant seeks to establish via the video is duplicative of the hearing testimony supplied by the Bank's financial-center manager: the manager testified that an unidentified woman was involved in the situation leading to Defendant's arrest, that the manager met with the woman for an appointment before Defendant arrived at the Bank, that the woman summoned Defendant to the Bank, that the manager did not see Defendant go to the teller's window, that the three met in the manager's office and stayed there for some time, and that the woman left before the police arrived. Dkt. No. [104] at 15-18, 21, 26-31; see also Dkt. No. [120] at 8-9. As to the other facts Defendant seeks to establish via the surveillance video, there is no indication that the Bank recorded audio or that additional footage would have been of such fine quality as to be capable of revealing facial expressions or showing what identification or other documents may have been passed among Defendant, the unidentified woman, and Bank employees; Defendant has not explained how footage showing whether the manager left her office at some point to speak to a teller or do something else at the Bank would be exculpatory; and his theory that video of the manager's movements and the length of time she spent with the unidentified woman would

somehow establish the nature of their relationship strikes the Court as speculative at best. Accordingly, the undersigned concludes that Defendant has failed to meet his burden of showing that the missing surveillance video was likely to significantly contribute to his defense.

For all of these reasons, the Court finds no Fifth Amendment violation resulting from the Bank's destruction of portions of its surveillance footage from the date of Defendant's arrest. Therefore, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court **OVERRULES** Defendant's objections and **ADOPTS** the Magistrate Judge's Report and Recommendation, Dkt. No. [117], as its opinion: Defendant's Motion to Restrict Certain Testimony Due to Destruction of Evidence, Dkt. No. [38], is **DENIED**.

## II. Order Setting Trial

The Court hereby sets the trial in this case to begin on **Friday, July 15, 2022, at 9:30 AM** in Courtroom 2107, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. The pretrial conference is set for Thursday, June 30, 2022, at 10:00 AM in Courtroom 2107. By noon on Thursday, June 16, 2022, the parties are to file their respective motions in limine and voir dire questions. By noon on Thursday, June 16, 2022, the Government is to file a brief statement of facts the parties can rely on for voir dire. By noon on Thursday, June 23, 2022, 2022, the parties are to file any objections to those items listed above. Requests to charge and verdict forms should be filed on CM/ECF and e-mailed to the

7

Courtroom Deputy Clerk in Word format by noon on Thursday, July 14, 2022. The time from April 28, 2022, to July 15, 2022, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The Court requires the parties to e-mail an exhibit and witness list to the Courtroom Deputy Clerk by Thursday, July 14, 2022. The list shall contain an identifying description of each exhibit to the right of the exhibit numbers. The list shall be double spaced with approximately 1.5 inches of space to the left of the number for court use. Additionally, the parties are required to deliver to chambers the morning of trial a tabbed exhibit notebook for the Court's use. Counsel shall comply with the Local Rules of this Court regarding exhibits. Any exhibit larger than 8 ½" x 11" will be returned to counsel pursuant to LR 79.1(B)(5), NDGa. Within ten (10) days following the conclusion of a trial or hearing, all parties must file photographs or other appropriate reproductions of oversized and non-documentary exhibits admitted as evidence at the trial or hearing. The parties must provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Courtroom 2107 is technology equipped. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology

into the courtroom must be filed prior to the pretrial conference, to allow time for proper notification to the U.S. Marshals Service.

It is the responsibility of counsel to immediately notify the Courtroom Deputy if a defendant requires interpretive services for any court proceeding so that services can be arranged. It is the responsibility of counsel to arrange interpretive services for any witnesses needing assistance of an interpreter for any court proceeding.

**IT IS SO ORDERED** this 28th day of April, 2022.

_____
**Leigh Martin May**
**United States District Judge**